UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOIT BALDWIN, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * Civil Action No. 16-cv-10736-ADB |
| | * |
| TOWN OF WEST TISBURY, | * |
| | * |
| Defendant | * |
| | * |
| | * |

# **MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Benoit Baldwin ("Plaintiff") filed suit alleging violations of his equal protection and due process rights as a result of Defendant Town of West Tisbury's ("Defendant" or the "Town") enforcement of its regulatory framework against him and his taxicab company and not against transportation network companies ("TNCs"), such as Uber and Lyft. [ECF No. 28]. Presently pending before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). [ECF No. 29]. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

### I. PROCEDURAL BACKGROUND

On April 15, 2016, Plaintiff filed his original complaint seeking declaratory judgment, injunctive relief, and monetary damages against the Town of West Tisbury, the Board of Selectmen of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Town Administrator Jennifer Rand, and Chief of Police Daniel Rossi. [ECF No. 1]. On August 5, 2016, the Commonwealth of Massachusetts enacted a comprehensive statute regulating TNCs, Mass. Gen. Laws ch. 159A1/2 (the "Act"), and shortly thereafter, on August 31, 2016, Defendant filed

a motion to dismiss for failure to state a claim, arguing that the Act preempted local laws that would regulate TNCs and taxis the same and therefore mooted Plaintiff's claims. [ECF No. 21, 22]. Plaintiff then filed a motion seeking permission to file an amended complaint [ECF No. 23], which the Court allowed on September 23, 2016 [ECF No. 25]. On November 22, 2016, Plaintiff amended his complaint, limiting his allegations to before August 5, 2016 (the date of the enactment of the Act). [ECF No. 28 ("Compl.")]. On December 8, 2016, Defendant again moved to dismiss for failure to state a claim. [ECF Nos. 29, 30]. On December 22, 2016, Plaintiff filed a memorandum in opposition to the motion in part.[1] [ECF No. 31].

## II. ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff is the co-owner and operator of Alpha Taxi, LLC, which is a taxi service that is licensed by Defendant, on the island of Martha's Vineyard, Massachusetts. Compl. ¶ 3. On or about April 15, 2015, Plaintiff learned that an Uber driver was operating in the Town without a license under the Town's taxi regulations. Compl. ¶ 5, 22, 23. In May 2016, a Lyft driver also began operating on Martha's Vineyard. Id. ¶ 6. Plaintiff alleges that the Lyft and Uber drivers are "engaged in the same exact service" as Plaintiff and his taxicab company. Id. ¶¶ 5–6. During the entire relevant time period, the Town enforced taxi regulations against Plaintiff and his company, but not against the TNCs. Id. ¶ 10. These regulations required that taxicab drivers have valid permits, owner's certificates, and be licensed with the Town's police department. Id. ¶ 7. A "taxicab" was defined as "[a]ny motor vehicle with a valid permit used or intended for use in the conveyance of persons for hire from place to place." Compl. ¶ 18.

---

[1] Plaintiff does not oppose dismissal as against the Board of Selectmen of West Tisbury, Richard Knabel, Jeffrey Manter, Cynthia Mitchell, Jennifer Rand, and Daniel Rossi. [ECF No. 31]. Accordingly, the Court addresses the motion only with respect to the Town.

2

Upon learning about the Uber driver in April 2015, Plaintiff filed a complaint with the Town's Administrator and with the Chief of Police seeking enforcement of the Town's taxi regulations against Uber and its driver. Id. ¶¶ 24–26. The Town's Board of Selectmen then placed the issue on its agenda for the weekly meeting on April 29, 2015, which Plaintiff attended. Id. ¶¶ 27, 29. At the meeting, the Board explained that, according to the Town's Counsel, the Town's taxi regulations did not apply to Uber. Id. ¶ 28. Plaintiff alleges that, at this meeting, he made it clear that he did not think that the Town Counsel's verbal opinion was sufficient to address his concerns and requested a copy of the opinion, which he received on May 11, 2015. Id. ¶¶ 29–30. Dissatisfied with the opinion, Plaintiff again requested that his complaint be placed on the next available meeting agenda. Id. ¶¶ 30–32. Although Plaintiff's request to be heard was not posted as a discussion topic on the agenda for the meeting, the Board deliberated and declined to hear Plaintiff's complaint again. Id. ¶¶ 33–35. On May 21, 2015, the Town Administrator subsequently e-mailed Plaintiff denying his request, and stating that any responses to the Town Counsel's opinion should be submitted in writing. Id. ¶ 35.

In May 2015, Plaintiff implemented an electronic hailing system for his taxicab service that allowed real-time booking and payment by credit card through various smartphone apps. Id. ¶¶ 36–37. Plaintiff alleges that this system "eras[ed] any difference" between his taxi service and TNCs. Id. ¶ 37. He further alleges that there was no rational basis for the disparate treatment of his taxicab and TNCs, like Lyft and Uber, prior to August 5, 2016.[2]

---

[2] The Act, Mass. Gen. Laws ch. 159A½, defines a TNC as "a corporation, partnership, sole proprietorship or other entity that uses a digital network to connect riders to drivers to pre-arrange and provide transportation." Mass. Gen. Laws ch. 159A½ § 1. It specifically designates the regulation of TNCs to a new division created within the Massachusetts Department of Public Utilities, which is tasked with implementing insurance requirements, monitoring fare estimates, and ensuring the annual inspection of TNC vehicles. Id. §§ 1, 2; Mass. Gen. Laws ch. 25, § 23. Further, the division issues permits that must be annually renewed, conducts hearings for TNCs, and has the power to impose penalties for noncompliance with the Act. Id. §§ 3, 6. The Act

Based on these facts, Plaintiff alleges violations of the Equal Protection Clause (Count I) and the Due Process Clause (Count II) of the Fourteenth Amendment to the U.S. Constitution. The complaint requests monetary damages only.

### III. LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to Plaintiff's theory, and draw all reasonable inferences from those facts in favor of Plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med. Inc., 647 F.3d 377, 383 (1st Cir. 2011). To avoid dismissal, a complaint must set forth "more than labels and conclusions," Bell Atl. Co. v. Twombly, 550 U.S. 544, 555 (2007), and must include "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted).

The facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570). The plausibility standard invites a two-step analysis. Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation

---

explicitly provides that "no municipality or other local or state entity . . . may . . . subject a [TNC] to the municipality's . . . requirements," with the narrow exception of allowing local regulation of "traffic flow and traffic patterns." Id. § 10.

4

omitted). "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

The Court will construe Baldwin's allegations liberally because he is proceeding *pro se*, Erickson v. Pardus, 551 U.S. 89, 94 (2007), however, the Court need not credit conclusory assertions or subjective characterizations. Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 5 (1st Cir. 2001). Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim. Muller v. Bedford VA Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

## IV. DISCUSSION[3]

Plaintiff limits his allegations to the time period preceding the Act, and thus the Court does not address Defendant's argument that the state law preempts any local regulation that would treat TNCs and taxis identically. With respect to the time period preceding the Act, Defendant argues that Plaintiff fails to state an equal protection violation because TNCs and Plaintiff's taxis were not similarly situated and a rational basis existed for the Town's differential treatment of them even before passage of the Act. Defendant specifically contends that the same

---

[3] In his amended complaint, Plaintiff fails to cite to 42 U.S.C. § 1983, which provides a cause of action for violations of the U.S. Constitution and federal law under certain circumstances. 42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393–94 (1989). Because he is proceeding pro se, the Court presumes that he intended to bring his constitutional claims under § 1983. See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 347 (2014) ("In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."). To succeed under § 1983, a plaintiff needs to show that "[f]irst, the challenged conduct must be attributable to a person acting under color of state law (including Puerto Rico law); second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). Defendants only challenge the second prong.

5

rational basis that exists for the Act was the rational basis for declining to regulate TNCs in the same manner as taxicabs in the Town. More specifically, Defendant argues that the Act sets forth how TNCs and taxicabs are not similarly situated for Equal Protection purposes. In support of his argument that there was no rational basis, Plaintiff states that a neighboring town regulated TNCs the same as taxicabs and that the Town's treatment evidenced "an irrational attitude towards its taxi companies, prejudiced in favor of their elimination." [ECF No. 31 ¶ 7].

Defendant next argues that the procedural due process claim must be dismissed because Plaintiff alleged neither a deprivation of a protected property right nor a deprivation of any process to which he was constitutionally entitled. In his opposition, Plaintiff identifies "revenue from fares that were rightfully his or that of his company's drivers" as the protected property interest he was deprived of, and also states that he was entitled to a hearing on his written complaint. Id. ¶ 8.

### A. Equal Protection Claim (Count I)

#### i. Legal Standard

"Under the Equal Protection Clause, similarly situated entities must be accorded similar governmental treatment." Barrington, 246 F.3d at 7. To succeed on an Equal Protection claim where there is no fundamental right or suspect classification involved, as is the case here, "a plaintiff . . . must show that [he] was 'intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (second alteration in original) (quoting Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006)); see also Davis v. Coakley, 802 F.3d 128, 132–33 (1st Cir. 2015).

The "similarly situated" test asks "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Barrington Cove, 246 F.3d at 8 (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 64 (1st Cir. 2004)). Entities or individuals need not be identical in every way before an Equal Protection clause violation occurs. Id. ("Exact correlation is neither likely nor necessary . . . .").

"Under rational basis scrutiny, a classification will withstand a constitutional challenge as long as it is rationally related to a legitimate state interest and is neither arbitrary, unreasonable nor irrational." D'Angelo v. N.H. Supreme Court, 740 F.3d 802, 806 (1st Cir. 2014) (quoting LCM Enters., Inc. v. Town of Dartmouth, 14 F.3d 675, 679 (1st Cir. 1994)). Further, an equal protection challenge that does not implicate a suspect classification or fundamental right fails "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 107 (1st Cir. 2015) (emphasis added) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)) (affirming dismissal of equal protection claim), cert. denied, 136 S. Ct. 808 (2016). A court need not examine every "reasonably conceivable state of facts . . . because '[r]emedial choices made by . . . regulatory bod[ies] are . . . rebuttable only where the party challenging the . . . regulation can establish that "there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals."'" Id. (alteration in original) (quoting Medeiros, 431 F.3d at 30). Instead, "[p]laintiffs bear the burden of 'negat[ing] any conceivable basis which might support' that set of 'fairly conceivable' facts."

7

Id. (second alteration in original) (quoting Donahue v. City of Boston, 371 F.3d 7, 16 (1st Cir. 2004)).

At the motion to dismiss stage, the Court applies these principles by conducting rational basis review in light of the well-pleaded facts in the complaint. See Melrose Credit Union v. City of New York, No. 15-CV-09042 (AJN), 2017 WL 1200902, at *8 (S.D.N.Y. Mar. 30, 2017); see also Barrington, 246 F.3d at 7–9 (examining complaint's allegations to determine whether "similarly situated" requirement adequately pled).

### ii. Application

At this stage, Plaintiff has adequately pled that his taxicabs and the TNCs on Martha's Vineyard during this time period were similarly situated in all relevant respects. Plaintiff alleges that he implemented an electronic hailing system that allowed for real-time booking, tracking of his cabs, and payments by credit card. Compl. ¶ 37. Given the dearth of facts implying salient differences and the Defendant's failure to point the Court to any judicially noticeable sources that might be helpful, the Court cannot decide now that such allegations are inadequate.

Further, based on the facts in the complaint, the Court cannot conclude that a legally rational basis existed to treat TNCs and Plaintiff's taxicabs differently. Defendant does not posit an actual rational basis for the differential treatment. It argues that there exists a rational basis, the same one underlying the Act, but it then fails to actually articulate what that rational basis is. Cf. Checker Cab Philadelphia v. Philadelphia Parking Auth., No. 16-4669, 2017 WL 2461980, at *5 (E.D. Pa. June 6, 2017) (denying motion to dismiss equal protection claim where, among other reasons, "no rational basis has been advanced for the PPA's failure to regulate the TNCs"). Even if the Court were to look to other cases and assume that Defendant is making the same rational basis argument here, it is not clear whether or how that rationale would apply to the time

8

period at issue in Martha's Vineyard given the changing nature of TNCs and Plaintiff's taxicabs. Defendant also does not identify any salient differences between Plaintiff's cabs and the TNCs during the relevant time period that could provide a rational basis, and the complaint does not allow the Court to infer that there were any germane differences. The Court hesitates to look to outside sources without any guidance from the parties, especially where the Equal Protection claim is specific to Plaintiff's cabs in Martha's Vineyard during a very limited time period. Defendant does not argue that the one fact the Court might be able to infer—that Plaintiff's cabs continued to be able to pick people up off the street without the use of a smartphone application—provides a rational basis, although the Town may more adequately brief the Equal Protection issues at a later stage.

The Court notes that Plaintiff likely faces an uphill battle. See, e.g., Ill. Transportation Trade Ass'n v. City of Chicago, 839 F.3d 594, 598 (7th Cir. 2016), cert. denied sub nom. Illinois Transp. Trade Ass'n v. City of Chicago, Ill., No. 16-1143, 2017 WL 1079335 (Apr. 24, 2017) (discussing differences between taxicabs and TNCs, and reversing district court's denial of motion to dismiss as to equal protection claim); Melrose Credit Union, 2017 WL 1200902, at *9–10 (identifying rational basis for disparate treatment of taxicabs and TNCs due to taxicabs' government-created monopoly on street hailing, and granting motion to dismiss Plaintiff's equal protection claim); Miadeco Corp. v. Miami-Dade Cty., No. 16-21976, 2017 WL 1319576, at *5 (S.D. Fla. Apr. 10, 2017) (holding that differences in hailing procedure, contracts between drivers and customers, and pricing provide rational basis for distinct regulatory schemes); Boston Taxi Owners Ass'n, Inc. v. Baker, No. 16-11922-NMG, 2017 WL 354010, at *6 (D. Mass. Jan. 24, 2017) (stating that consumers' inability to negotiate taxicab fares, and their lack of information about taxicab drivers, rationally justifies more stringent regulations than applied to

TNCs); Desoto CAB Co. v. Picker, 228 F. Supp. 3d 950, 960–61 (N.D. Cal. 2017) (noting other courts' agreement that the vulnerability of street-hailing customers justifies increased protection in the form of unique regulations for taxicabs); Gebresalassie v. District of Columbia, 170 F. Supp. 3d 52, 61-68 (D.D.C. 2016) (finding rational basis based on differences between taxicab and TNC regulations, including ride fare, passenger surcharge, insurance, vehicle color and appearance, meter system, dome lights, credit card machines, and licensure). Nonetheless, the Court is unable to dismiss the Equal Protection claim at this time absent additional facts or factual allegations and more adequate briefing. Thus, the motion is denied without prejudice as to the first count.

### B. Procedural Due Process Claim

In Count II, Plaintiff argues that his due process rights were violated because he was denied a second hearing on the issue of whether TNCs should be regulated in the same manner as taxicabs. Defendant claims that the complaint should be dismissed because the Plaintiff has neither identified a protected property right that he has been deprived of, nor demonstrated that he was deprived of any particular process to which he was constitutionally entitled.

The Due Process Clause prohibits a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This prohibition "applies fully to a state's political subdivisions, including municipalities and municipal agencies." Harron v. Town of Franklin, 660 F.3d 531, 535 (1st Cir. 2011) (quoting DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005)). A procedural due process claim involves a two-step inquiry: "the first [is] whether there exists a liberty or property interest which has been interfered with by the State; the second [is] whether the procedures attendant upon that deprivation were constitutionally

sufficient." Id. at 537 (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010)). "[P]roperty interests are defined by state law." Id.

Here, there seems to be no liberty interest alleged or implicated,[4] and Plaintiff fails to identify any protected property interest that he had a "legitimate claim of entitlement" to and was subsequently deprived of. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 (1st Cir. 2005) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). Plaintiff argues that he has sufficiently alleged a deprivation of property "in the form of revenue from fares that were rightfully his or that of his company's drivers." [ECF No. 31 ¶ 8]. Specifically, Plaintiff and his company would have gotten additional fares from individuals leaving Martha's Vineyard Airport, where getting fares is generally "first-come, first-serve," if not for the TNCs. Id. The opportunity to collect additional fares from customers, however, is not a legally protected property right in that Plaintiff does not have a property right to be free from the competition introduced by TNCs. See Ill. Transp. Trade Ass'n v. City of Chicago, 839 F.3d 594, 596 (7th Cir. 2016) (holding that "'[p]roperty' does not include a right to be free from competition" in the transportation market from companies like Uber), cert. denied 137 S. Ct. 1829 (Apr. 24, 2017); Boston Taxi Owners Ass'n, Inc. v. City of Boston, 180 F. Supp. 3d 108, 117 (D. Mass. 2016) (dismissing Takings Clause claim because taxicab drivers "do[] not possess a property interest in the transportation-for-hire market itself"); Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis, 572 F.3d 502, 508–10 (8th Cir. 2009) (dismissing due process claim because "taxicab licensees do not have protected property interests in the market value of their licenses" where municipality or state did not grant them "an unalterable monopoly over the Minneapolis

---

[4] "To invoke a liberty interest, the plaintiffs would have to identify 'a right or status previously recognized by state law [that] was distinctly altered or extinguished' by state action." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 8 n.4 (1st Cir. 2005) (alteration in original) (quoting Paul v. Davis, 424 U.S. 693, 711 (1976)).

11

taxicab market"). Thus, Plaintiff's claims do not sufficiently allege that he had a protected property interest and the Court therefore dismisses Count II. See Harron, 660 F.3d at 537 (affirming dismissal of procedural due process claim because plaintiff failed to articulate any protected interest).

## V.    CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 29] is GRANTED with respect to Count II (Due Process claim), but DENIED without prejudice with respect to Count I (Equal Protection claim).

**SO ORDERED.**

**Dated:** September 7, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE